## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DISTRICT OF COLUMBIA,<br><br>       Plaintiff,<br><br>       v.<br><br>POTOMAC ELECTRIC POWER<br>COMPANY, *et al.*,<br><br>       Defendants. | Civil Action No. 11-00282 (BAH) |

## <u>MEMORANDUM OPINION</u>

The District of Columbia brought this action against Pepco, a power generation company, pursuant to federal and D.C. environmental statutes. The District alleges that, between 1985 and 2003, there were six documented releases of toxic polychlorinated biphenyls ("PCBs") at a Pepco facility located at 3400 Benning Road, N.E., Washington, D.C. The District alleges that, over time, these environmentally damaging PCBs have seeped into sediment of the Anacostia River. The District and Pepco have reached a settlement that calls for Pepco to conduct a Remedial Investigation and Feasibility Study as the initial step in remedying the contamination. The parties have moved the Court to enter a consent decree that memorializes their settlement. Three environmental organizations – the National Resources Defense Council, the Anacostia River-keeper, and the Anacostia Watershed Society – have moved to intervene in this action or, in the alternative, for leave to participate as amici curiae. These organizations oppose entry of the consent decree in its current form. For the reasons explained below, the Court denies the motion to intervene but grants the proposed intervenors' request for leave to participate as amici curiae. In addition, the Court approves entry of the consent decree upon certain conditions outlined below.

# I.   BACKGROUND

The District of Columbia, through the District Department of the Environment (the

"District," "DDOE," or the "plaintiff"), filed the Complaint in this action on February 1, 2011

against Potomac Electric Power Company and Pepco Energy Services, Inc. (collectively, "Pepco"

or the "defendant").  Compl. at 1.  The Complaint alleges claims under Section 7002(a)(1)(B) of the

Resource Conservation and Recovery Act ("RCRA"), under Section 107 of the Comprehensive

Environmental Response, Compensation, and Liability Act ("CERCLA"), and under Section

401(a)(2) of the District of Columbia Brownfield Revitalization Act of 2000 ("DCBRA").  Compl.

¶ 1.

Pepco and its affiliated companies constitute one of the largest energy delivery companies in

the mid-Atlantic region.  *Id.* ¶ 2.  The plaintiff alleges that from 1985 to 2003 six documented

releases of toxic PCBs occurred at Pepco's facility at 3400 Benning Road, N.E., Washington, D.C.

(the "Facility").  *Id.* ¶ 4.  The Complaint alleges that these PCBs have migrated into the sediment of

the Anacostia River via the storm water system, overland flow, or groundwater discharge.  *Id.*

PCBs meet the definition of solid waste under RCRA and a hazardous substance under CERCLA

and DCBRA.  *Id.*  Thus, the plaintiff alleges that "Pepco's discharge of PCBs into the Anacostia has

contributed to conditions which may pose an imminent and substantial endangerment to aquatic life

in the Anacostia River, and to human health."  *Id.*  The plaintiff alleges that the "conditions at the

Facility result from Pepco's generation, management and disposal of hazardous substances, and

Pepco, as a 'generator,' may be liable for the costs of abating such conditions."  *Id.*

The plaintiff and Pepco have reached a settlement pursuant to which Pepco has agreed to

conduct a remedial investigation and feasibility study ("RI/FS") to study the conditions at the

Facility and the adjacent areas of the river, to determine the link between the Facility and the PCBs

in the river, and to assess clean-up options.   The parties have memorialized this agreement in a

proposed consent decree.  The proposed consent decree was originally published for public

comment on February 4, 2011, shortly after this action was filed.  Pl.'s Mem. in Supp. of Pl.'s Mot.

To Enter Consent Decree, ECF No. 24-1, at 1.  On March 11, 2011, the plaintiff received comments

on the proposed consent decree from the Natural Resources Defense Council, the Anacostia

Watershed Society, and the Anacostia Riverkeeper.  *Id.* at 1-2.  On April 26, 2011, these three

organizations (the "proposed intervenors") filed a motion to intervene as plaintiffs in this action.

ECF No. 2.

     The District considered the proposed intervenors' comments on the proposed consent decree

and prepared a detailed written response.  Pl.'s Mem. in Supp. of Pl.'s Mot. to Enter Consent

Decree at 2.  The District then revised the consent decree, including by incorporating some of the

proposed intervenors critiques, and negotiated the revisions with Pepco.  *Id.*  The parties executed

the revised consent decree on July 29, 2011 and filed it with the Court on August 17, 2011.  *Id.*; *see*

ECF No. 22.

     The plaintiff has moved for the revised proposed consent decree to be entered.  The

proposed intervenors seek to intervene in this action and oppose entry of the consent decree.  The

plaintiff and Pepco oppose the motion to intervene.  These motions are presently before the Court.

     On November 22, 2011, the Court held oral argument on the motion to intervene and the

motion to enter the consent decree.  The proposed intervenors fully participated in oral argument on

both motions.  Following oral argument, the Court took the motions under advisement, but issued a

Minute Order requesting that the parties submit a proposed order for entry of the consent decree.

*See* Minute Order dated Nov. 22, 2011.  The Court directed that the proposed order should indicate

that acceptance of the proposed consent decree is contingent on two supplementary requirements

relating to (1) ensuring public participation and access to information regarding the RI/FS and (2)

providing the Court with a status report on the progress of the timely implementation of the RI/FS.

*Id.* These two supplementary requirements are discussed further below.

## II.     MOTION TO INTERVENE

### A.     Legal Standard

"Federal Rule of Civil Procedure 24 sets forth the requirements for both intervention as of

right and permissive intervention." *Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 65 (D.D.C. 2004)

(citing Fed. R. Civ. P. 24); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir.

2003).  Rule 24(a) provides for intervention as of right, stating that

> [o]n timely motion, the court must permit anyone to intervene who . . . is given an
> unconditional right to intervene by a federal statute [or] . . . claims an interest relating to the
> property or transaction that is the subject of the action, and is so situated that disposing of
> the action may as a practical matter impair or impede the movant's ability to protect its
> interests, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  "As paraphrased by the D.C. Circuit, the rule indicates that an applicant's

right to intervene depends on '(1) the timeliness of the motion; (2) whether the applicant claims an

interest relating to the property or transaction which is the subject of the action; (3) whether the

applicant is so situated that the disposition of the action may as a practical matter impair or impede

the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately

represented by existing parties.'" *Leavitt*, 329 F. Supp. at 65-66 (quoting *Fund for Animals*, 322

F.3d at 731); *see also Jones v. Prince George's County, Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003)

(listing the four elements of Rule 24(a) as "timeliness, interest, impairment of interest, and

adequacy of representation").  "In addition, an applicant for intervention as of right must

demonstrate that it has standing by showing injury-in-fact, causation, and redressability." *Leavitt*,

329 F. Supp. at 66 (citing *Fund for Animals*, 322 F.3d at 732-33).  "Specifically, the applicant must

have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not

conjectural or hypothetical." *Id.* (citing *Byrd v. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999)). "Second,

the injury must be fairly traceable to the governmental conduct alleged." *Id.* "Finally, it must be likely that the requested relief will redress the alleged injury." *Id.*

"Alternatively, Rule 24(b) authorizes permissive intervention for an applicant who timely files a motion where a federal statute confers a conditional right to intervene or the applicant's claim or defense has a question of law or fact in common with the main action." *Id.* (citing Fed. R. Civ. P. 24(b)). "If a federal statute does not confer a conditional right to intervene, Rule 24(b)(2) requires a would-be intervenor to present '(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action.'" *Id.* (citing *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)). The decision to allow permissive intervention under Rule 24(b) is committed to the district court's discretion. *Id.* (citing *Nat'l Children's Ctr.*, 146 F.3d at 1046, 1048). In exercising its discretion to allow permissive intervention, the Court must consider whether the proposed intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

### B.      Intervention As A Matter Of Right Is Unwarranted

The proposed intervenors move to intervene as a matter of right or, in the alternative, via permissive intervention. Mot. to Intervene, or in the Alternative for Leave to Participate as Amici Curiae, and Mem. in Supp., ECF No. 2 ("Intervenor Mem.") at 2, 4, 10. In the alternative to either form of intervention, the proposed intervenors also seek leave to participate as amici curiae. *Id.* at 2.

The Court will deny the motion to intervene as a matter of right. Even assuming, *arguendo*, that all of the other prerequisites for intervention under Rule 24(a) were satisfied, the Court does not find that the proposed intervenors are "so situated that disposing of the action may as a practical matter impair or impede the [proposed intevenors'] ability to protect [their] interest[s]." Fed. R.

Civ. P. 24(a).  In assessing this factor, the D.C. Circuit has instructed that courts must consider "the practical consequences of denying intervention, even where the possibility of [a] future challenge . . . remain[s] available."  *Fund for Animals*, 322 F.3d at 735 (internal quotation omitted).

As a practical matter, denying intervention would not impair or impede the proposed intervenors' ability to protect their interests, which the proposed intervenors identify as interests "in protecting human health, including the health of their members, and in protecting and restoring the Anacostia River, including abatement of toxic contamination in the river."  Intervenor Mem. at 7 (citing Proposed Intervenor Compl. ¶¶ 13-16).  The District's claims in this action are proposed to be settled by consent decree.  Even if the Court permits the proposed intervenors to intervene in this action, they would not be able to block entry of the consent decree.  *See United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996) ("[I]f such a citizen were allowed to block entry of a consent decree merely by objecting to its terms it would wreak havoc upon government enforcement actions.  Moreover, it is well settled that the right to have its objections heard does not, of course, give the intervenor the right to block any settlement to which it objects.") (internal citations, quotations, and alteration omitted).[1]  Since the Court will grant the proposed intervenors leave to participate as amici curiae, as discussed below, the Court will have the opportunity to consider all of the proposed intervenors' objections to the proposed consent decree in evaluating whether to accept the consent decree.  Thus, denying intervention here will not practically impair the proposed intervenors' ability to protect their interests because they will be able to present their critiques of the consent decree to the Court and because they could not block the consent decree even if intervention were granted.

---

[1] While intervenors may not be able to block entry of the consent decree between the District and Pepco, intervention would result in delaying settlement of this action because the consent decree here would not settle the claims in the proposed intervenors' complaint-in-intervention.  Counsel for Pepco stated at oral argument that if intervention were granted, Pepco would enter into negotiations to attempt to resolve all claims in this action together.  Thus, intervention would practically delay entry of the consent decree.

Courts have found that "disposing of [an] action may as a practical matter impair or impede" a proposed intervenor's interests when the disposition of the action would result in a substantial change in the status quo with respect to those interests. For example, in finding that intervention was warranted in *Fund for Animals*, the D.C. Circuit observed that "there is no question that the task of reestablishing the status quo if the [plaintiff] succeeds in this case will be difficult and burdensome." 322 F.3d at 735. The Court in that case also found that the proposed intervenor's "loss of revenues . . . would be substantial and likely irreparable." *Id.* (citing *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1076 (D.C. Cir. 1998) (holding that danger of loss of market share due to denial of a preliminary injunction satisfied the third Rule 24(a)(2) factor)).

Here, the disposition of this action by consent decree will not create any irreparable results or alter the status quo in a way that is hard to reverse. The proposed consent decree provides, *inter alia*, that Pepco shall conduct and pay for an RI/FS to assess the contamination at the polluted site. Revised Consent Decree, ECF No. 22-1, ¶ 8. Pepco is also required to reimburse the District for its oversight costs. *Id.* ¶ 7. Importantly, the consent decree explicitly does not absolve Pepco of liability for subsequent remedial actions relating to contamination from the Facility. *See id.* ¶ 12, f, xi (stating that "[e]xcept for matters related to the RI/FS that are expressly resolved by this Consent Decree," the District reserves all available remedies arising out of "[a]ny liability, at any time, for additional response actions to address the Anacostia river."). Since the settlement of the claims in this action would not resolve the ultimate question of how the pollution will be cleaned up, the Court does not find that denial of intervention at this time would practically impair the proposed intervenors' ability to protect their interests. Intervention in or commencement of future actions remains a possible and practical avenue for the proposed intervenors to protect their interests. *Cf. Leavitt*, 329 F. Supp. 2d at 68 ("[N]othing in the decree would preclude [the proposed intervenor] from participating in the rulemaking or from challenging the final rule that emerges."). The RI/FS

that would result from settlement of this action would not substantially change the status quo at the Facility or in the river.

The proposed intervenors respond that "the RI/FS itself is a crucial part of the remediation process. . . [and] early decisions will affect every subsequent stage of the remediation process and may substantially determine whether an endangerment is found and, if so, how it is resolved." Reply in Supp. of Mot. to Intervene or for Leave to Participate as Amici Curiae at 4.  Even if the Court accepts this premise, that does not require a finding that the disposition of this action, which is proposed to be settled by consent decree, will impair the proposed intervenors' ability to protect their interests.  As noted above, the proposed intervenors will be able to present their critiques of the consent decree to the Court as amici curiae and they could not block the consent decree even if intervention were granted.

The proposed intervenors also argue that a future challenge in this case would be "difficult and burdensome" because RCRA bars independent citizen lawsuits where a state is "diligently prosecuting" an environmental matter.  Intervenor Mem. at 7 (citing 42 U.S.C. § 6972(b)(2)(C)(i)). Specifically, the proposed intervenors argue that since the District's prosecution of this action "might constitute diligent state prosecution under RCRA that bars [them] from bringing a separate RCRA suit," denial of intervention here would practically impair their ability to protect their interests by filing their own lawsuit.  *Id.*  To the contrary, the fact that Congress has limited the ability of citizens to initiate environmental lawsuits where a state is already prosecuting a matter does not demonstrate that denial of intervention would practically impair the proposed intervenors' interests.  Indeed, the same statute that establishes this "diligent prosecution" bar cited by the proposed intervenors also specifically addresses the circumstances in which intervention is appropriate.  RCRA provides, in relevant part:

> In any action under subsection (a)(1)(B) of this section in a court of the United States, any person may intervene as a matter of right when the applicant claims an interest relating to

the subject of the action and he is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest, unless the Administrator or the State shows that the applicant's interest is adequately represented by existing parties.

42 U.S.C. § 6972(b)(2)(E).  Thus, RCRA itself provides that while a citizen may not initiate a new action on an environmental matter that the state is diligently prosecuting, a citizen may intervene in such an action, *if* the citizen "is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect [his] interest. . . ." *Id.*  If the mere existence of the diligent prosecution bar to initiating new actions were sufficient to show practical impairment, then the practical impairment requirement would effectively be nullified because it would be satisfied in every case.[2]  Courts disfavor statutory interpretations that render part of the statute superfluous. *Nat'l Ass'n of Mortg. Brokers v. Bd. of Govs. of Fed. Reserve Sys.*, 773 F. Supp. 2d 151,168 (D.D.C. 2011) ("[I]t is a cardinal principle of statutory construction that the statute ought, upon the whole, be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant.") (quoting *TRW, Inc. v. Andrews*, 534 U.S. 19, 21 (2001)).  Disposition of this action by the proposed consent decree would not practically impair the proposed intervenors' ability to protect their interests for the reasons addressed above.[3]

_____

[2] The proposed intervenors treat Section 6972(b)(2)(E) as creating a "conditional right to intervene" that enables permissive intervention under Rule 24(b)(1)(A).  *See* Intervenor Mem. at 10.  Yet the language of Section 6792(b)(2)(E) purports to enable intervention "as a matter of right" and its requirements mirror the requirements for intervention of right under Rule 24(a)(2).  The Court therefore finds that Section 6972(b)(2)(E) may best be read as clarifying the circumstances in which Rule 24(a) intervention of right is appropriate in a RCRA action.  *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984) ("[T]he requirements for intervention embodied in Rule 24(a)(2) must be read also in the context of the particular statutory scheme that is the basis for the litigation and with an eye to the posture of the litigation at the time the motion is decided."); *see also Litgo New Jersey, Inc. v. Jackson*, No. 06-2891, 2006 WL 3333486, at *4 (D.N.J. Nov. 16, 2006) (describing Section 6972(b)(2)(E) as enabling application "to intervene as a matter of right").  Ultimately, the Court would deny intervention regardless of whether this provision is analyzed under the rubric of permissive intervention or intervention of right.

[3] The District argues that RCRA's diligent prosecution bar to commencing a new action should also bar the proposed intevenors' complaint-in-intervention here because the complaint-in-intervention adds new claims that significantly expand the scope of this action, such that the complaint-in-intervention should be treated as the initiation of a new action rather than a true intervention.  *See* Pl.'s Sur-Reply, ECF No. 13, at 3-5.  Relatedly, the District argues that if the complaint-in-intervention is treated as commencing a new action, it is also barred because the proposed intervenors failed to comply with certain notice requirements for commencing a new RCRA action.  *See id.*  Since the Court is denying intervention for the reasons discussed herein, it need not reach these arguments.

### C.    Permissive Intervention Is Unwarranted

The Court also finds that permissive intervention is unwarranted in this case.  Courts have "wide latitude" in exercising their discretion to allow or deny permissive intervention.  *Nat'l Children's Ctr.*, 146 F.3d at 1046.  "Reversal of a district court's denial of permissive intervention is a 'very rare bird indeed.'"  *Id.* at 1048 (citation omitted).  "District courts have the discretion . . . to deny a motion for permissive intervention even if the movant established an independent jurisdictional basis, submitted a timely motion, and advanced a claim or defense that shares a common question with the main action."  *Id.*  In exercising its discretion to allow permissive intervention, the Court must consider whether the proposed intervention "will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b).

Here, the Court finds that intervention is likely to unduly delay the adjudication of the original parties' rights.  Indeed, the instant motion for intervention and the extensive briefing surrounding it has already delayed the Court's consideration of the revised consent decree. Intervention would likely delay the resolution of this action – and the associated RI/FS for the contaminated site – even further by triggering renewed negotiations over the terms of the consent decree in an attempt to resolve the proposed intervenors' claims simultaneously with the District's claims.  In addition, allowing intervention would undermine part of the benefit of entering into a consent decree for the settling parties – namely, minimizing litigation and focusing on getting the RI/FS for the contaminated site underway expeditiously.  Accordingly, permissive intervention is unwarranted.

### D.    The Proposed Intervenors May Participate As Amici Curiae In This Action

The Court has broad discretion to permit the proposed intervenors to participate as amici curiae.  *See Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93

(D.D.C. 2007).  Since the proposed intervenors are environmental organizations with relevant

expertise and a stated concern for the issues at stake in this case, the Court finds that it may benefit

from their input in evaluating the proposed consent decree.  Therefore, the proposed intervenors are

granted leave to participate as amici curiae and the Court will consider their comments in their

written submissions and at oral argument in its assessment of the consent decree below.

## III.    MOTION TO ENTER CONSENT DECREE

A court reviewing a consent decree must "'determine that the settlement is fair, adequate,

reasonable and appropriate under the particular facts and that there has been valid consent by the

concerned parties.'"  *Leavitt,* 329 F. Supp. 2d at 70 (quoting *Citizens for a Better Env't v. Gorsuch*,

718 F.2d 1117, 1126 (D.C. Cir. 1983)).  A court must also assess whether the consent decree is in

the public interest.  *Id.*  Upon evaluating the consent decree in consideration of these standards, and

following oral argument and the submissions of the parties and the amici, the Court finds that the

consent decree should be entered with the supplementary conditions discussed below and set forth

in the Order that accompanies this Memorandum Opinion.

### A.    The Consent Decree Is Fair And In The Public Interest

"A review of the fairness of a proposed consent decree requires an assessment of the good

faith of the parties, the opinions of the counsel, and the possible risks involved in litigation if the

settlement is not approved."  *Id.* (quotation omitted).  "A consent decree is substantively fair if it

incorporates concepts of corrective justice and accountability."  *Id.* (internal quotation and citation

omitted).

Both parties consent to the entry of the decree.  The parties negotiated the settlement under a

deadline imposed by the Environmental Protection Agency.  Pl.'s Mem. in Supp. of Pl.'s Mot. to

Enter Consent Decree ("Pl.'s Consent Decree Mem.") at 3.  The EPA has been informed of the

details of the agreement and "has not stated any objection or indicated that the Proposed Consent

Decree is insufficient in any way that would cause EPA to exercise its federal enforcement authorities with respect to the Facility." *Id.*  Moreover, the consent decree is the product of a process that invited public input and it incorporates revisions adopted in response to the comments of the proposed intervenors. *Id.* at 5.  Accordingly, the Court finds the consent decree to be procedurally fair.

The Court also finds that the decree is substantively fair.  It requires Pepco, the suspected source of PCB contamination in the Anacostia River, to undertake the RI/FS and to reimburse the District for its oversight costs.  At the same time, the District recognizes that there are other potential sources of pollution in the Anacostia River.  *See id.* at 3-4.  Therefore, the District submits that the "investigation will allows the Parties to determine what harm Pepco is responsible for, and if justified, for the District to seek remedial action for that harm." *Id.*  Under the proposed consent decree, the District retains the right to sue Pepco to enforce any liability for future remedial actions to clean up the pollution at the Facility and in the river.  *See* Revised Consent Decree ¶ 12, f, ix-xi.  Indeed, counsel for the District noted at oral argument that a subsequent lawsuit was the likely avenue for enforcing the ultimate remediation requirements.  Thus, the consent decree incorporates concepts of corrective justice and accountability.

### B.       The Consent Decree Is Adequate, Reasonable, And Appropriate

"The factors for determining the adequacy, reasonableness and appropriateness of a consent decree focus on the extent to which the decree is confined to the dispute between the parties and whether the decree adequately accomplishes its purported goal." *Leavitt*, 329 F. Supp. 2d at 71.  "The role of the court in evaluating these factors, however, 'is not to impose its own judgments as to how it would prosecute and resolve a particular case.'" *Id.* (quoting *District of Columbia*, 933 F. Supp. 42 at 51).  "Rather, the court must determine whether the proposed consent decree is reasonable from an objective point of view." *Id.* (internal quotation marks omitted).

The environmental group amici have raised two primary concerns about the adequacy and reasonableness of the consent decree.  First, the amici argue that the consent decree is flawed because it fails to include a firm deadline for the completion of the RI/FS.  *See* Opp'n to Mot. to Enter the Consent Decree ("Amici Opp'n") at 2.  As a result, the amici contend that "Pepco could delay for years or even decades" before completing the RI/FS.  *Id.* at 3.  While it is true that the consent decree does not contain a binding final deadline for completion of the RI/FS, it does establish a process for scheduling the completion of the work.  The consent decree provides that 60 days after entry of the consent decree, Pepco must submit a draft Statement of Work for the RI/FS.  Revised Consent Decree ¶ 8(c).  Then, 90 days after the District's approval of a final Statement of Work, Pepco must submit a draft work plan and other relevant documents, including a proposed schedule for the RI/FS.  *Id.*  Within 30 days after the District approves the final work plan, Pepco must initiate work on the RI/FS according to the schedule in the work plan.  *Id.*  The decree specifies that this schedule becomes binding, although it permits the District to extend the deadlines in its discretion.  *Id.*  More generally, the decree also provides that all work under the consent decree shall be performed "expeditiously."  *Id.* ¶ 8(a).  Thus, the danger of Pepco dragging the RI/FS process out for years, as amici fear, would contravene the intent of the consent decree and would appear to require that the District also fail to act in good faith by holding Pepco to reasonable, binding deadlines for the completion of the work.

Amici rely heavily on *Envtl. Tech. Council v. Browner*, No. 94-2119, 1995 WL 238328 (D.D.C. 1995), to argue that the Court should reject the consent decree for failure to include a binding deadline for completion of the RI/FS.  In *Browner*, the plaintiffs sued the EPA for failure to issue certain regulations relating to hazardous waste.  *Id.* at *1-2.  The consent decree proposed in that case would have allowed the EPA and the settling plaintiffs to "stipulate to extensions of the deadlines for issuing the proposed and final rules without approval of the Court and without

13

showing good cause." *Id*. at *6.  The *Browner* court found this arrangement insufficient to protect

against unreasonable extensions of time and therefore rejected the consent decree.  *Id*. at *7.  As

Pepco pointed out at oral argument, however, *Browner* is distinguishable from this case because, in

*Browner*, the proposed consent decree would have relied upon a private party – the settling

plaintiffs – to protect the public interest by ensuring that a government agency complied with its

legal obligations to issue regulations.  As Judge Hogan explained:

> While the settling plaintiffs may not ordinarily consent to an extension that they do not
> believe is justified, the Court harbors serious doubts that it is consistent with the public
> interest to leave the determination of good cause for an extension in the hands of the settling
> plaintiffs alone. The public interest in the promulgation of timely regulations appears to
> require the Court to carefully scrutinize any additional extensions of the rulemaking
> schedule when the EPA is already proposing to issue its final rule more than two years after
> the deadline imposed by Congress. The settling plaintiffs have other private interests that
> may affect their willingness to consent to an extension of a deadline. Absent an impartial
> determination as to the reasonableness of any extensions of time, the public interest is left
> unprotected.

*Id*. at *7.  Here, the main concern is to ensure that Pepco will complete the RI/FS in a reasonable

time frame.  Since the DDOE is a public agency charged with protecting the public interest on

environmental issues, the Court will assume that the DDOE will act in good faith and in the public

interest in policing Pepco's responsibility to complete the RI/FS in a reasonable time frame.  Unlike

the settling plaintiffs in *Browner*, DDOE, as a public environmental agency, does not have "private

interests that may affect [its] willingness to consent to an extension of a deadline." *Id.*

Nonetheless, to ensure sufficient public and judicial oversight of the timeliness of the RI/FS

process, the Court will require, as a condition of entry of the consent decree, that the parties file a

status report with the Court within 18 months after the consented decree is entered.[4]  This status

report shall address the progress in implementation of the consent decree and any related plans for

remediation of environmental contamination.  If the RI/FS has not been completed by the reporting

---

[4] The parties explained at oral argument that 18 months was a reasonable time period for the completion of the RI/FS,
barring any unforeseen challenges, and that two years represented the "outside date" estimate for completion.

date, the status report shall provide an explanation and showing of good cause for why it has not

been completed and shall explain to the Court in detail how the parties plan to complete the RI/FS

expeditiously.

The amici's second objection to the proposed consent decree is that it does not impose

sufficient substantive requirements for the RI/FS.  Specifically, the amici object that the consent

decree itself embodies only a scope of work outline for the RI/FS, leaving a detailed statement of

work, work plan, and community involvement plan, among other documents, to be fleshed out after

the consent decree is entered.  *See* Amici Opp'n at 4-6.  The parties contend that it is acceptable to

leave the more detailed elements of the RI/FS plan to be worked out after the entry of the decree.

The parties note that the consent decree provides an outline for the structure of the full RI/FS plan

and specifies that the "RI/FS will be conducted pursuant to relevant U.S. EPA guidelines and

standards" – specifically, EPA OSWER Directive 9355.3-01, "Guidance for Conducting Remedial

Investigations and Feasibility Studies under CERCLA."  Ex. A to the Revised Consent Decree at 3.

The amici argue that the Court should follow the lead of *United States v. Telluride

Company*, a District of Colorado case in which the court rejected a consent decree in part because

the settling government plaintiff "relied on the defendant to develop much of the technical data

upon which it relied in formulating the decree and remediation plan."  849 F. Supp. 1400, 1406 (D.

Colo. 1994).  The posture of this case is significantly different from that of *Telluride*, however.  In

*Telluride*, the consent decree concerned a proposed remediation plan that would have restored only

approximately 15 acres of wetlands where the defendant had illegally destroyed 45 to 47 acres.  *Id.*

at 1405-1406.  The *Telluride* court also found the government to be dismissive of public comments,

despite having received forty letters regarding the proposed consent decree.  *Id.*

Here, the consent decree concerns only the RI/FS evaluation of the contaminated site and

does not address any remedial actions, which are reserved for a subsequent lawsuit.  Further, unlike

in *Telluride*, the DDOE in this case provided detailed written responses to the public comments

from amici, *see* ECF No. 21-1, and, in some instances, has negotiated changes to the consent decree

based on those comments. *See id.* In the circumstances of this case, the Court finds that the consent

decree is reasonable, adequate, and appropriate. This conclusion is especially true in light of the

Court's view that it is important to begin the RI/FS process promptly. Indeed, as the *Telluride* court

noted, "[t]he need for the expeditious cleanup of an environmental violation can weigh in favor of

approval of a proposed consent decree." *Telluride*, 849 F. Supp. at 1405. Given that important

details of the RI/FS process do remain to be elaborated by the parties, however, it is critical to

ensure robust opportunities for public access, review, and comment upon the implementation of the

consent decree. Accordingly, the Court will approve the consent decree only upon the

understanding – accepted by the parties at oral argument – that Paragraphs 37 and 38 of the

proposed consent decree, relating to the opportunity for public participation and the publication of

the administrative record, require the District timely to publicize Pepco's draft plans and other

submissions under Paragraph 8(c) of the proposed consent decree. These paragraphs also require

the timely publication of all final plans and other documents approved by the District under the

terms of the proposed consent decree. These publication requirements will enable the public to

review and comment upon Pepco's draft proposals for the RI/FS components prior to the District's

approval of those proposals. Thus, the District will be able to take public comments into account

before deciding whether to accept a particular proposal from Pepco. At oral argument, the District

urged the Court to enter the consent decree in part because of its view that more robust engagement

with the public regarding the RI/FS would be possible after this litigation is settled. Thus, the Court

fully expects the District will pursue a process of active public engagement and will seriously

consider all the public comments provided in response to Pepco's draft proposals.

## IV.      CONCLUSION

For the reasons explained above, the Court denies the motion to intervene and grants the

motion to enter the consent decree, subject to the conditions described above.  An appropriate Order

will accompany this Memorandum Opinion.

**DATED: December 1, 2011**                              /s/ *Beryl A. Howell*

                                                                              BERYL A. HOWELL
                                                                              United States District Judge